# No. 24-2876

Kevin Scott Karsjens, and all others similarly situated; Kevin John DeVillion, and all others similarly situated; Peter Gerard Lonergan, and all others similarly situated; James Matthew Noyer, Sr., and all others similarly situated; James John Rud, and all others similarly situated; James Allen Barber, and all others similarly situated; Craig Allen Bolte, and all others similarly situated; Dennis Richard Steiner, and all others similarly situated; Kaine Joseph Braun, and all others similarly situated; Christopher John Thuringer, and all others similarly situated; Kenny S. Daywitt, and all others similarly situated; Bradley Wayne Foster, and all others similarly situated; David Leroy Gamble, Jr., and all others similarly situated; and Brian K. Hausfeld, and all others similarly situated,

Plaintiffs-Appellees,

vs.

Jodi Harpstead; Kevin Moser, in their individual and official capacities; Peter Puffer; Ann Zimmerman, in their individual and official capacities; Nancy Johnston, in their individual and official capacities; and Jannine Hébert, in their individual and official capacities,

Defendants-Appellants.

## ON APPEAL FROM THE UNITED STATE DISTRICT COURT FOR THE DISTRICT OF MINNESOTA CASE NO. 11-CV-03659-DWF-TNL

## BRIEF OF DEFENDANTS-APPELLANTS

KEITH ELLISON
Attorney General
State of Minnesota

SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771

AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

BRANDON BOESE
Assistant Attorney General
Atty. Reg. No. 0396385

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1385 (Voice)
(651) 282-5832 (Fax)
scott.ikeda@ag.state.mn.us
aaron.winter@ag.state.mn.us
brandon.boese@ag.state.mn.us

*Attorneys for Defendants-Appellants*

## SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT

At Plaintiffs' request, the district court appointed four expert witnesses under Rule 706 (the "706 Experts") and ordered that their compensation "be charged as costs in this litigation." App. 268; R. Doc. 393, at 5. To provide payment during the litigation, the parties jointly recommended that the district court initially allocate half of the 706 Experts' compensation to Plaintiffs and half to Defendants. The district court rejected the parties' agreement and initially allocated the entirety to Defendants "[w]ithout prejudice to subsequent adjustment." App. 344; R. Doc. 427, at 75. In total, Defendants paid over $700,000 to the 706 Experts and their advisor.

After years of litigation and appeals, judgment was ultimately entered in Defendants' favor. Defendants then did what prevailing parties customarily do: they filed a Bill of Costs. Unsurprisingly, Defendants included the amount the district court had ordered them to pay the 706 Experts. The district court, however, denied Defendants' costs, holding it was the "fair and equitable thing to do" because it did not believe Plaintiffs had the ability to pay. But the district court made no inquiry into Plaintiffs' ability to pay or whether Plaintiffs themselves, and not their attorneys, are responsible for costs; it also ignored Plaintiffs' prior agreement to pay half of these costs. The order was an abuse of discretion and should be reversed.

Given the history of this lawsuit and the significance of this issue, Defendants request 15 minutes of oral argument.

# TABLE OF CONTENTS

**Page**

SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT ....................i

TABLE OF AUTHORITIES ..................................................................... v

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES ..................................................................... 2

STATEMENT OF THE CASE.................................................................. 3

I.     HISTORY OF THIS LITIGATION. ................................................... 3

       A.     Plaintiffs' Complaint. ............................................................ 3

       B.     Plaintiffs Move For A Preliminary Injunction And The District
              Court Appoints Rule 706 Experts At Plaintiffs' Request. .................... 4

       C.     The District Court Initially Allocates The Entirety Of The
              706 Experts' Compensation To Defendants. ........................................ 7

       D.     Appointment Of Technical Advisor..................................................... 8

       E.     The District Court Gave *Ex Parte* Instructions To The
              706 Experts To Help Plaintiffs Prove Their Claims. ........................... 9

       F.     The District Court Directed Plaintiffs To Amend Their
              Complaint Three Months Before Trial.............................................. 10

       G.     The District Court Denies Summary Judgment And Instructs
              Minnesota's Executive And Legislative Branches To Adopt
              Reforms. ............................................................................................ 12

       H.     The Bench Trial And The District Court's Liability And
              Injunctive Orders.............................................................................. 13

       I.     This Court Reversed, Concluding That Chapter 253D Was
              Constitutional Both On Its Face And As Applied.............................. 14

       J.     On Remand, The District Court Dismisses The Remainder Of
              Plaintiffs' Claims.............................................................................. 15

K.    This Court Again Reverses And Remands ........................................ 16

L.    Defendants Taxed Their Costs. ........................................ 16

M.   The District Court Again Dismisses The Remaining Phase One Claims, And This Court Affirms. ........................................ 18

II.   THE PRESENT COST DISPUTE. ........................................ 18

STANDARD OF REVIEW ........................................ 20

SUMMARY OF ARGUMENT ........................................ 20

ARGUMENT ........................................ 22

THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO HOLD PLAINTIFFS TO THEIR EVIDENTIARY BURDEN TO REBUT DEFENDANTS' PRESUMPTION TO COSTS. ........................................ 22

A.    The District Court's Bases For Concluding Plaintiffs Rebutted The Presumption That Defendants Are Entitled To Recover Costs Are Not Legally Or Factually Supported. ........................................ 23

    1.    Plaintiffs Did Not Provide Any Evidence Demonstrating Their Inability To Pay The Cost Judgment. ........................................ 23

        a.    Plaintiffs' IFP Status Does Not Exempt Them From Costs. ........................................ 24

        b.    Plaintiffs' Claimed Indigence Lacked Evidentiary Support. ........................................ 25

        c.    The Record Suggests Plaintiffs Are Not Personally Responsible For Paying Costs, And Plaintiffs Did Not Provide Evidence To The Contrary. ........................................ 27

    2.    Any Purported "Chilling Effect" On Future Litigation Is Speculative And Unsupported By The Record. ........................................ 29

    3.    The "Good Faith" and "Public Interest" Nature Of Plaintiffs' Lawsuit Does Not Rebut Defendants' Presumption To Recover Costs. ........................................ 31

B.      The District Court's Order Denying Defendants' Costs Was Neither Fair Nor Equitable...................................................33

CONCLUSION.................................................................................35

CERTIFICATES OF COMPLIANCE.............................................37, 38

APPELLANTS' ADDENDUM.......................................................Add. 1

APPELLANTS' APPENDIX ........................................................App. 1

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Butterfield v. CiCi Enterps.*,
No. CV-20-1590, 2020 WL 7047654 (D. Ariz. Dec. 1, 2020) ................... 26

*Beckley v. St. Luke's Episcopal-Presbyterian Hosps.*,
No. 4:17-cv-1369, 2019 WL 2437957 (E.D. Mo. June 11, 2019) .............. 26

*Brown v. Cooper*,
No. 18-cv-219, 2018 WL 3360769 (D. Minn. July 10, 2018) .............. 30, 31

*Burdess v. Cottrell, Inc.*,
No 4:17-cv-1515, 2022 WL 888135 (E.D. Mo. Mar. 25, 2022) ................ 25

*Carey v. Piphus*,
435 U.S. 247 (1978) ..................................................................... 32

*Concord Boat Corp. v. Brunswick Corp.*,
309 F.3d 494 (8th Cir. 2002) ..................................................... 2, 22

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ..................................................................... 20

*Cross v. Gen. Motors Corp.*,
721 F.2d 1152 (8th Cir. 1983) ...................................................... 24

*Delta Air Lines, Inc. v. August*,
450 U.S. 346 (1981) ..................................................................... 22

*Flint v. Haynes*,
651 F.2d 970 (4th Cir.1981) ......................................................... 24

*Gebreslassie v. Lyngblomsten*,
No. 05-326 (DWF/JSM), 2007 WL 270431 (D. Minn. Jan. 25, 2007) ........ 26

*Greaser v. Mo. Dep't of Corr.*,
   145 F.3d 979 (8th Cir. 1998) ........................................................ 22

*Harris v. Forsyth*,
   742 F.2d 1277 (11th Cir.1984) ...................................................... 24

*Hogan v. Novartis Pharms. Corp.*,
   548 Fed. App'x 672 (7th Cir. 2013) ....................................... 2, 27

*In re Paoli R.R. Yard PCB Litig.*,
   221 F.3d 449 (8th Cir. 2002) ........................................................ 22

*Jackson v. Unknown Smith*,
   116 F.3d 480, 1997 WL 325433 (8th Cir. 1997).......................... 24

*Johnson v. Mead Johnson & Co.*,
   No. 11-cv-225, 2013 WL 3340124 (D. Minn. July 2, 2013),
   *rev'd on other grounds by* 754 F.3d 557 (8th Cir. 2014) ............. 25

*Kaplan v. Mayo Clinic*,
   No. 07-cv-3630 (JRT/JJK),
   2011 WL 383709 (D. Minn. Aug. 29, 2011)........................... 31, 32

*Karsjens v. Harpstead ("Karsjens III")*,
   74 F.4th 561 (8th Cir. 2023) ............................................. 3, 18, 19

*Karsjens v. Lourey ("Karsjens II")*,
   988 F.3d 1047 (8th Cir. 2021) ............................................... 16, 18

*Karsjens v. Piper ("Karsjens I")*,
   845 F.3d 394 (8th Cir. 2017) ........................................................ 15

*Lampkins v. Thompson*,
   337 F.3d 1009 (8th Cir. 2003) ............................................... 24, 33

*Lay v. Anderson*,
   837 F.2d 231 (5th Cir.1988) ........................................................ 24

*Martin v. DiamlerChrysler Corp.*,
   251 F.3d 691 (8th Cir. 2001) ........................................................ 20

*N. Am. Composites Co. v. Reich*,
    No. 15-cv-3537 (PJS/JJK), 2016 WL 4074140 (D. Minn. July 29, 2016)... 26

*Pacheco v. Mineta*,
    448 F.3d 783 (5th Cir. 2006) ........................................................ 31

*Porter v. McDonough*,
    No. 09-2536 (RHK/SER), 2011 WL 821181 (D. Minn. Mar. 2, 2011) ....... 24

*Rivera v. City of Chicago*,
    469 F.3d 631 (7th Cir. 2006) ................................................... 2, 26

*Sales v. Marshall*,
    873 F.2d 115 (6th Cir.1989) ........................................................ 24

*Steckelberg v. Chamberlain School Dist.*,
    77 F.4th 1167 (8th Cir. 2023) ..................................................... 23

*Strutton v. Meade*,
    No. 4:05CV02022, 2010 WL 4609365 (E.D. Mo. Nov. 4, 2010)............... 24

*Thompson v. Wal-Mart Stores, Inc.*,
    472 F.3d 515 (8th Cir. 2006) ..................................................... 22

*U.S. Marshals Serv. v. Means*,
    741 F.2d 1053 (8th Cir. 1984) ................................................... 30

*Williams v. Crawford & Co.*,
    No. 3:20-CV-1553, 2022 WL 4466723 (N.D. Tex. Sept. 25, 2022)............ 25

**FEDERAL STATUTES**

28 U.S.C. § 1291 ............................................................................ 1

28 U.S.C. § 1331 ............................................................................ 1

28 U.S.C. § 1915(f)(1) ................................................................... 24

28 U.S.C. § 1920 ........................................................................... 31

**FEDERAL RULES**

Fed. R. Civ. P. 54 ................................................................. 16, 22, 24, 31

Fed. R. Civ. P. 54(d)(1) ............................................................. 31, 32

Fed. R. Civ. App. P. 4(a)(1)(A) ......................................................... 1

Fed. R. Evid. 706 ................................................................... 2, 5, 9

Fed. R. Evid. 706(b) ..................................................................... 9

Fed. R. Evid. 706(c)(2) ................................................................. 33

**STATE RULES**

Minn. R. Prof. Cond. 1.5(b) ........................................................... 28

Minn. R. Prof. Cond. 3.1 .............................................................. 32

**OTHER AUTHORITIES**

D. Minn. L.R. 54.3(c)(3)(A) ........................................................... 27

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction in this case pursuant to 28 U.S.C. § 1331. Defendants timely appealed the district court's August 15, 2024 judgment denying Defendants' Bill of Costs by filing a Notice of Appeal on September 11, 2024, which was within the 30-day appeal window. Fed. R. Civ. App. P. 4(a)(1)(A). The district court's judgment determined all issues related to Defendants' Bill of Costs. This Court has jurisdiction of this appeal under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.  Did the district court abuse its discretion by denying Defendants' Bill of Costs, which included compensation for four experts appointed by the district court under Rule 706?

    Most Apposite Authorities:

    > *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494 (8th Cir. 2002)

    > *Hogan v. Novartis Pharms. Corp.*, 548 Fed. App'x 672 (7th Cir. 2013)

    > *Rivera v. City of Chicago*, 469 F.3d 631 (7th Cir. 2006)

# STATEMENT OF THE CASE

Defendants' Bill of Costs arises from a class-action lawsuit challenging the constitutionality of the Minnesota Sex Offender Program ("MSOP"), which provides treatment and housing to individuals who are indeterminately civilly committed as sexually dangerous persons or sexual psychopathic personalities under Minnesota law. This lawsuit began in 2011 and recently concluded following this Court's decision in *Karsjens v. Harpstead*, 74 F.4th 561 (8th Cir. 2023). The only remaining issue is Defendants' recovery of their costs.

## I. HISTORY OF THIS LITIGATION.

### A. Plaintiffs' Complaint.

Plaintiffs are fourteen individuals who are (or were) civilly committed to MSOP. Their original complaint challenged the policies and conditions at MSOP, including the efficacy of the treatment provided to them. App. 1–47; R. Doc. 1, at 1–47.[1] The complaint generally alleged unconstitutional searches in violation of the Fourth Amendment; unconstitutional media, telephone, and mail policies under the First Amendment; and a Fourteenth Amendment claim that focused on inadequate treatment, along with other complaints about the food, vocational work program, and MSOP employee uniforms. App. 37–44; R. Doc. 1, at 37–44. Plaintiffs later amended their complaint twice, App. 48–110; R. Doc. 151, at 1–63; App. 133–214;

---

[1] "App." refers to Appellants' Appendix. "Add." refers to Appellants' Addendum.

R. Doc. 301, at 1–82, retaining the same general focus on MSOP policies, conditions, and treatment, and adding a vague claim that the Minnesota Commitment and Treatment Act ("MCTA") was unconstitutional as applied because MSOP did not provide "acceptable mental health treatment" and "Defendants' implementation" of the statute led to a "punitive, not therapeutic" environment at MSOP. App. 105–06; R. Doc. 151, at 58–86 (¶¶ 229, 232); App. 204–05; R. Doc. 301, at 72–73 (¶¶ 286–89).

### B. Plaintiffs Move For A Preliminary Injunction And The District Court Appoints Rule 706 Experts At Plaintiffs' Request.

The district court certified a Rule 23(b)(2) class in July 2012. App. 121–22; R. Doc. 203, at 11–12. In August 2013, Plaintiffs moved the district court for an order that required MSOP to "immediately provide less restrictive alternative treatment facilities" for MSOP clients, and to "immediately re-evaluate" each MSOP client "to determine if they should be placed in a less restrictive facility." App. 215; R. Doc. 310, at 1. Plaintiffs also sought to require that each class member be "immediately re-evaluated" to ensure that they were in the proper treatment phase at MSOP. App. 218; R. Doc. 313, at 2.[2]

Plaintiffs also asked the district court to require that Defendants pay the entirety of their litigation expenses, including the cost for Plaintiffs to retain expert

---

[2] Although both motions were later withdrawn on November 19, 2023, R. Doc. 359, Plaintiffs re-filed both motions later that day. R. Docs. 364, 368.

witnesses. App. 219–38; R. Doc. 319, at 1–20. Plaintiffs argued Federal Rule of Evidence 706 "provide[d] a sound basis for the [district court] to appoint experts" for Plaintiffs at Defendants' expense. App. 224, 225–26; R. Doc. 319, at 6, 7–8. Plaintiffs claimed they needed expert testimony on the following topics:

1) the failure of the current treatment program and the requirements to establish an effective treatment program that comports with constitutional protections,

2) the problems associated with the current facilities and the requirements to create constitutionally acceptable conditions of confinement, and

3) the problems with the lack of a less restrictive alternative facility and the need to establish such facilities.

App. 223; R. Doc. 319, at 5. Plaintiffs told the district court that expert opinions were "essential" to establish their claims, and that Plaintiffs would "certainly need input from experts" to address MSOP's alleged deficiencies. App. 226, 228; R. Doc. 319, at 8, 10. Plaintiffs also argued they needed expert witnesses to conduct the re-evaluations they requested in their preliminary injunction motion. App. 230; R. Doc. 319, at 12. Alternatively, Plaintiffs asked the district court to appoint experts for the court's benefit, "in consultation with Plaintiffs' counsel." *Id.*

Over Defendants' objection, App. 239–46; R. Doc. 328, at 1–8, the district court granted Plaintiffs' motion in part and appointed four expert witnesses "for the benefit of the [district] [c]ourt." App. 256; R. Doc. 354, at 4. Although the district court denied Plaintiffs' motion to the extent it sought payment by Defendants of

Plaintiffs' litigation expenses, the district court was clear that its ruling "in no way prohibit[ed] Plaintiffs from recovering their costs and fees if ultimately successful at the close of this case." *Id*. And despite stating it appointed the experts for the court's benefit, the district court ordered the experts to do the precise work that Plaintiffs claimed was "essential" to their claims:

| Plaintiffs' "Essential" Issues: | 706 Experts' Scope of Work: |
|---|---|
| "[T]he failure of the current treatment program and the requirements to establish an effective treatment program that comports with constitutional protections." App. 223; R. Doc. 319, at 5. | "Reviewing the current treatment program at MSOP and its implementation to determine whether the program meets professional standards of care and treatment for sex offenders and issuing recommendations as to any changes that should be made to the treatment program." App. 340; R. Doc. 427, at 71. |
| "[T]he problems associated with the current facilities and the requirements to create constitutionally acceptable conditions of confinement." App. 223; R. Doc. 319, at 5. | "Reviewing current MSOP policies and practices with regard to the conditions of confinement to determine whether they satisfy the balance between safety concerns and a therapeutic environment and making recommendations for any changes that should be made to the conditions of confinement at both the Moose Lake and St. Peter facility." App. 340; R. Doc. 427, at 71. |
| "[T]he problems with the lack of a less restrictive alternative facility and the need to establish such facilities." App. 223; R. Doc. 319, at 5. | "[T]he specific need and parameters for less restrictive alternative facilities, including the operation of such facilities," App. 340; R. Doc. 427, at 71, and "developing proposals for any new in-patient facilities," App. 340 n.55; R. Doc. 427, at 71 n.55. |

Moreover, while the district court denied Plaintiffs' motions for injunctive relief, App. 339; R. Doc. 427, at 70, it simply ordered the newly appointed 706 Experts to carry out the injunctive relief Plaintiffs sought:

| Plaintiffs' Requested Relief: | Scope of 706 Experts' Work: |
|---|---|
| "Order that each Class member be immediately re-evaluated by an independent qualified sex offender expert . . . in order to ensure that each Class member is correctly placed in the proper treatment phase at the MSOP." App. 263; R. Doc. 368, at 2. | "Evaluating all class members and issuing reports and recommendations as to: . . . (c) whether each class member is placed in the appropriate phase of treatment." App. 339–40; R. Doc. 427, at 70–71. |
| Require Defendants "to immediately re-evaluate each Plaintiff and Class member to determine if they should be placed in a less restrictive facility." App. 260; R. Doc. 364, at 1. | "Evaluating all class members and issuing reports and recommendations as to: . . . (d) whether each class member would be a candidate for a less restrictive facility." App. 339–40; R. Doc. 427, at 70–71. |

## C. The District Court Initially Allocates The Entirety Of The 706 Experts' Compensation To Defendants.

The district court explicitly said that the 706 Experts' compensation would be "charged as costs in this litigation." App. 268; R. Doc. 393, at 5. To compensate the experts during the pendency of the litigation, however, the district court ordered the parties to provide a recommendation "for the allocation of such payment." *Id.* Plaintiffs agreed that half of the 706 Experts' costs should be initially allocated to them:

> [T]he parties through their respective counsel have met and conferred on the allocation of payment to the experts. *The parties recommend an allocation of 50/50 between plaintiffs and defendants . . . .*

Add. 19; App. 269; R. Doc. 403, at 1 (emphasis added). Without explanation, the district court rejected this agreement and "initially allocated" the entirety of the 706 Experts' costs to Defendants:

> The parties shall meet and confer . . . to establish an interim budget deposit for the experts and a mechanism for payment. Without prejudice to subsequent adjustment, such costs shall be initially allocated to Defendants.

App. 344; R. Doc. 427, at 75. The district court then required Defendants to deposit $1.8 million into the district court's registry as an account from which to pay the experts. App. 346; R. Doc. 434, at 2. In total during the litigation, the district court ordered Defendants to pay over $680,000 to the 706 Experts. App. 348–49; R. Doc. 440, at 1–2; App. 351–52; R. Doc. 454, at 1–2; App. 353–54; R. Doc. 466, at 1–2; App. 357–58; R. Doc. 562, at 1–2; App. 425–26; R. Doc. 597, at 1–2; App. 570–71; R. Doc. 677, at 1–2; App. 632–33; R. Doc. 857, at 1–2; App. 646–47; R. Doc. 915, at 1–2.

### D. Appointment Of Technical Advisor.

The district court also appointed a "Technical Advisor" in the fall of 2013. App. 251–52; R. Doc. 341, at 5–6. The initial role of the Technical Advisor was to oversee the transition of certain MSOP clients to a facility in Cambridge, Minnesota. App. 250–51; R. Doc. 341, at 4–5. In appointing the Technical Advisor, the district

8

court said he would serve "in this capacity *pro bono*." App. 252; R. Doc. 341, at 6. The district court, however, later amended the scope of the Technical Advisor's role to "oversee[] and coordinate[]" the 706 Experts' work, App. 343; R. Doc. 427, at 74, and ordered Defendants to pay for the Technical Advisor's services as well, App. 345–47; R. Doc. 434, at 1–3. In total, the district court ordered payment to the Technical Advisor of over $48,000 from the registry account Defendants had funded. App. 350; R. Doc. 441; App. 355; R. Doc. 508, at 1; App. 356; R. Doc. 561, at 1; App. 422; R. Doc. 588, at 1; App. 451; R. Doc. 619, at 1; App. 572; R. Doc. 768, at 1; App. 636; R. Doc. 886, at 1; App. 548; R. Doc. 918, at 1.

### E.  The District Court Gave *Ex Parte* Instructions To The 706 Experts To Help Plaintiffs Prove Their Claims.

In July 2014, Defendants learned for the first time that the district court gave *ex parte* instructions to the 706 Experts to find evidence to support Plaintiffs' claims, in violation of Rule 706. App. 367–72; R. Doc. 569, at 75–80; *see also* Fed. R. Evid. 706(b) (requiring the court to inform the expert of duties in writing and file a copy with the clerk, or "orally at a conference in which the parties have an opportunity to participate"). Specifically, 706 Expert Robin Wilson testified that during an April 2014 telephone call, the district court instructed the 706 Experts to find a "bellwether" class member "that could be either recommended for release or for some sort of a change in circumstances." App. 366–68; R. Doc. 569, at 74–76. Wilson explained that this meant someone who, in the 706 Experts' opinion, should

not be committed to MSOP, but who should be released. App. 367–68; R. Doc. 569, at 75–76. Wilson also testified that "the Judges were interested in whether or not there were any individual cases that might serve as an example." App. 368; R. Doc. 569, at 76.

The 706 Experts' search—at the district court's direction—for someone who might "serve as an example" led to a review process of MSOP client files in which the 706 Experts focused only on perceived "problem files," App. 372; R. Doc. 569, at 80, and, as Wilson testified, "put [] aside" files in which no problems were identified after a "cursory review." *Id.* Wilson stated that this process could not possibly result in a positive report for Defendants, such as identifying individuals who were in the right location, in the right phase of treatment, and receiving the proper treatment for their treatment phase. *Id.* Upon this discovery, Defendants again objected to the district court's use of 706 Experts and the *ex parte* instructions given to them. App. 383–88; R. Doc. 569, at 91–96. The district court overruled these objections. App. 395–420; R. Doc. 570, at 264–89.

## F. The District Court Directed Plaintiffs To Amend Their Complaint Three Months Before Trial.

Almost three years after this lawsuit was filed, the district court in September 2014 proposed a two-phase bifurcated trial, with the first phase being a bench trial that addressed the facial and as-applied constitutionality of the MCTA, as well as a number of "sub-issues":

The Court proposes that the following issues be addressed in Phase One: (1) whether the civil commitment statute is unconstitutional on its face; and (2) whether the civil commitment statute is unconstitutional as applied. These systemic constitutional issues encompass the nature and duration of civil confinement, including the following nonexhaustive list of sub-issues: whether periodic independent reviews are provided; whether risk or dangerousness is evaluated during reviews; whether less restrictive alternatives are required; whether the treatment provided is constitutionally infirm; whether the systemic conditions of confinement are unconstitutional; and whether the reduction in custody and discharge procedure is constitutionally infirm.

App. 428–29; R. Doc. 598, at 1–2. The scope of this Phase One proposal bore little resemblance to the claims in Plaintiffs' then-operative Second Amended Complaint, which retained the original complaint's focus on the conditions and treatment at MSOP. App. 189–212; R. Doc. 301, at 57–80.

Defendants objected, noting among other things that the court's issues included claims not contained in Plaintiffs' Second Amended Complaint. App. 440; R. Doc. 608, at 4. The district court then ordered Plaintiffs to decide whether they intended to request leave to file a Third Amended Complaint, App. 449; R. Doc. 613, at 1, and in response Plaintiffs filed a motion to amend their Second Amended Complaint to mirror the issues and sub-issues identified by the district court, adding a facial challenge (Count I) and greatly expanding the as-applied claim (Count II). App. 452; R. Doc. 622, at 1; *see also* App. 530–35; R. Doc. 635, at 59–64. The new claims closely matched the structure and content of what the district court indicated it wanted to try. *Compare* App. 428–29; R. Doc. 598, at 1–2, *with*

App. 530–35; R. Doc. 635, at 59–64.  The district court granted leave to amend, over Defendants' objection, just three months before trial, holding that "there are no new claims asserted in this amended complaint."  App. 564; R. Doc. 642, at 26; *see also* App. 459–63;  R. Doc. 633,  at 6–10;  App. 558;  R. Doc. 637,  at 1;  App. 567–69; R. Doc. 665, at 1–3.

G.  **The District Court Denies Summary Judgment And Instructs Minnesota's Executive And Legislative Branches To Adopt Reforms.**

The district court denied Defendants' summary judgment motion in February 2015, just seven days before the bench trial.  App. 615; R. Doc. 828, at 43.  In so doing, the district court stated that "the executive and legislative branches in Minnesota have let politics, rather than the rule of law and the rights of 'all' of their citizens guide their decisions"; and "irrespective of the Court's ultimate rulings on any Constitutional questions with which it is presented, the interests of justice require that substantial changes be made to Minnesota's sex offender civil commitment scheme."  App. 614; R. Doc. 828, at 42.  The district court directed the State of Minnesota to "address and resolve" the "systemic problems that Plaintiffs have identified."  App. 614–15; R. Doc. 828, at 42–43.  It continued, stating that "[i]t is difficult for the Court to understand why the parties have not resolved this case in a manner that would address clients' concerns. . . . Justice requires no less." App. 615; R. Doc. 828, at 43.

### H. The Bench Trial And The District Court's Liability And Injunctive Orders.

The Phase One bench trial took place from February 9, 2015, to March 18, 2015, and it encompassed Plaintiffs' substantive due process claims (Counts I, II, III, IV, V, VI, VII, and XI of the Third Amended Complaint). App. 622; R. Doc. 839; App. 644; R. Doc. 908, at 1; *see also* App. 825; R. Doc. 1097, at 2.[3] Over Defendants' objection, App. 641; R. Doc. 904, at 138, Plaintiffs were allowed to call the district court's 706 Experts at the beginning of the trial to present their case. The testimony of the four 706 Experts took up almost the entire first six days of trial. *See* App. 622; R. Doc. 839, at 1; App. 624; R. Doc. 847, at 1; App. 626; R. Doc. 848, at 1; App. 628; R. Doc. 851, at 1; App. 630; R. Doc. 852, at 1; App. 634; R. Doc. 860, at 1.

On June 17, 2015, the district court concluded that the MCTA was unconstitutional, both on its face and as applied. App. 649–724; R. Doc. 966, at 1-76. The district court decided only the facial and as-applied challenges, declining to address the remainder of the Phase One claims. App. 713; R. Doc. 966, at 65. The district court's order scheduled a "Remedies Phase pre-hearing conference," where the parties and other state leaders—including Minnesota's

---

[3] Counts IV and XI were dismissed with prejudice on August 10, 2015, leaving Counts I, II, III, V, VI, and VII for the Court's consideration after the Phase One trial. App. 725–26; R. Doc. 1005, at 1–2. Phase Two Counts XII and XIII were also dismissed. *Id.*

Governor and the leadership of the Minnesota Legislature—were asked to attend to "discuss the relief [the court] find[s] appropriate." App. 723; R. Doc. 966, at 75. Listing sixteen different remedies proposals of its own, the district court warned Minnesota's public officials: "The Court is hopeful that the stakeholders will fashion suitable remedies so that the Court need not consider closing the MSOP facilities or releasing a number of individuals from the MSOP with or without conditions." App. 721–22; R. Doc. 966, at 73–74.

This conference did not lead to agreement. App. 738; R. Doc. 1035, at 9. The district court again warned the State that, if it failed to begin implementing certain of its sixteen measures, the district court would impose "a more forceful solution." App. 729; R. Doc. 1006, at 3.

On October 29, 2015, the district court issued its "First Interim Relief Order," imposing sweeping systemwide relief that indefinitely enmeshed the district court in both the administration of MSOP and the review and placement of every committed sex offender at MSOP. *See* App. 730–72; R. Doc. 1035, at 1–43. The district court indicated that "more remedies orders are likely to follow." App. 767; R. Doc. 1035, at 38.

## I. This Court Reversed, Concluding That Chapter 253D Was Constitutional Both On Its Face And As Applied.

Defendants appealed, and this Court reversed on the basis that the district court applied the wrong legal standards to the facial and as-applied challenges to the

MCTA. *See Karsjens v. Piper*, 845 F.3d 394 (8th Cir. 2017) ("*Karsjens I*"). Applying the correct legal standards, this Court held that the MCTA was facially constitutional because the "extensive process and the protections to persons committed under the MCTA are rationally related to the State's legitimate interest of protecting its citizens from sexually dangerous persons or person who have a sexual psychopathic personality." *Id.* at 410. As to the as-applied claim, the Court held that none of the grounds identified by the district court "violated the class plaintiffs' substantive due process rights in an as-applied context" as they did not meet the conscience-shocking standard. *Id.* at 410–11. The Court accordingly reversed the district court's finding of a constitutional violation, vacated the injunctive order, and remanded the matter for further proceedings on the remaining claims. *Id.* at 411.

### J. On Remand, The District Court Dismisses The Remainder Of Plaintiffs' Claims.

On remand, Defendants provided supplemental briefing on the remaining Phase One claims, moved for summary judgment on the Phase Two claims, and requested final apportionment of the 706 Expert costs. *See* App. 822–23; R. Doc. 1095, at 1–2; App. 824–59; R. Doc. 1097, at 1–36. Following full briefing and a hearing, the district court dismissed the remaining Phase One claims (Counts III, V, VI, and VII) and granted summary judgment in favor of Defendants on Plaintiffs' Phase Two claims (Counts VIII, IX, and X). App. 937; R. Doc. 1108,

at 42.  With respect to the 706 Experts, the district court acknowledged their costs were subject to taxation under Rule 54.  App. 934; R. Doc. 1108, at 39. Nevertheless, it concluded that "an order apportioning the costs of the Rule 706 Experts to Plaintiffs would be premature at this stage." *Id.*  It reserved the right to "revisit" the issue pursuant to Rule 54 "following the entry of final judgment and upon complete briefing by the parties."  App. 934–35; R. Doc. 1108, at 39–40.

## K.     This Court Again Reverses And Remands.

Plaintiffs appealed the district court's decision on the remaining Phase One claims; it did not appeal the summary judgment decision as to the Phase Two claims. App. 952; R. Doc. 1118, at 2 ("Plaintiffs' appeal of this order is limited to the District Court's dismissal of Counts III, V, VI and VIII.").  On appeal, this Court affirmed the dismissal of Count III as duplicative of the previously dismissed Count II, but reversed on the remaining counts, holding the district court erred by failing to apply the correct standard to the conditions-of-confinement claims. *Karsjens v. Lourey*, 988 F.3d 1047, 1053–54 (8th Cir. 2021) ("*Karsjens II*").

## L.     Defendants Taxed Their Costs.

At about the same time Plaintiffs appealed, Defendants followed the district court's previous instruction and filed a Bill of Costs to recover the expenses Defendants incurred related to, among other things, the 706 Experts.  App. 938; R. Doc. 1114, at 1.  Defendants sought to recover $106,437.76 in costs related to

transcripts necessarily obtained for use in the case, and $732,923.92 for compensation of the 706 Experts and the district court's Technical Advisor, which totaled $839,361.68. *Id.*

Plaintiffs objected, arguing they should not be responsible for these costs because they brought their lawsuit in good faith, and they did not have the ability to pay. App. 943–45; R. Doc. 1116, at 4–6. Plaintiffs, however, provided no documentation to support their claimed indigence. *See generally id.* Nor did Plaintiffs provide any evidence that they were personally responsible for any taxed costs, as opposed to their lawyers who might be responsible pursuant to a retainer agreement. *Id.* Instead, Plaintiffs simply cited their IFP applications that were, at that point, seven years old, and indicated that the district court could hold an evidentiary hearing on Plaintiffs' financial status. App. 941 n.2; R. Doc. 1116, at 2 n.2.

Over Plaintiffs' objection, the Clerk of Court entered a cost judgment in the amount of $837,534.23, deducting only minor transcript fees for various reasons. *See* App. 954; R. Doc. 1125, at 1; App. 956–58; R. Doc. 1125-1, at 1–3. The Clerk of Court taxed the entirety of Defendants' request related to the 706 Experts and Technical Advisor. App. 954; R. Doc. 1125, at 1. Plaintiffs moved the district court to review the cost judgment, making the same arguments regarding good faith and indigency. App. 960–70; R. Doc. 1127, at 1–11. But again, despite bearing the

burden to show an inability to pay, Plaintiffs provided no evidence to support their purported indigency—nor, again, any evidence of their responsibility to pay. *Id.*

Before the district court could decide this issue, this Court issued its decision in *Karsjen II*, and Plaintiffs withdrew their motion to review the cost judgment. App. 985; R. Doc. 1146. Plaintiffs did, however, tax their appellate costs. *See* Plaintiffs-Appellants' Bill of Costs, *Karsjens v. Lourey*, No. 18-3343 (8th Cir. Mar. 10, 2021), Entry ID: 5012971.

### M. The District Court Again Dismisses The Remaining Phase One Claims, And This Court Affirms.

On remand for the second time, the parties again briefed the remaining claims. Following a hearing, the district court dismissed Plaintiffs' claims, holding that none of the challenged conditions were unconstitutionally punitive. App. 1026; R. Doc. 1197, at 41. This Court affirmed, *Karsjens v. Harpstead*, 74 F.4th 561 (8th Cir. 2023) ("*Karsjens III*"), and the Supreme Court denied review, 144 S. Ct. 814 (2024).

## II. THE PRESENT COST DISPUTE.

After the district court decided the remaining Phase One claims in Defendants' favor post-*Karsjens II*, Defendants again filed a Bill of Costs. Add. 8–9; App. 1027–28; R. Doc. 1203, at 1–2. Like the first time, Defendants included the $732,923.92 related to the 706 Experts and the district court's Technical Advisor. Add. 8; App. 1027; R. Doc. 1203, at 1. Defendants also included $105,002.21 in

transcript costs,[4] for a total of $837,926.13. *Id.* Plaintiffs objected, making the same good-faith and indigency arguments they asserted before. App. 1138–51; R. Doc. 1207, at 1–14. Consistent with their prior submissions, Plaintiffs did not provide any documentation supporting their claimed indigency, nor did they provide any documentation showing they were personally liable for these costs. *See id.*

Following this Court's decision in *Karsjens III*, the district court denied Defendants' Bill of Costs in its entirety. Add. 7; App. 1159; R. Doc. 1218, at 7. Although the district court did not find any of the requested costs to be legally improper, it concluded the "fair and equitable thing to do" was to deny any costs to Defendants. *Id.* The district court articulated four reasons for its order. First, the district court cited the "substantial fees" Defendants sought, holding that to award costs in that amount would have a "chilling effect" on future litigation. Add. 5–6; App. 1157–58; R. Doc. 1218, at 5–6. Second, the district court observed that Plaintiffs brought their lawsuit in good faith. Add. 4; App. 1156; R. Doc. 1218, at 4. Third, the district court believed an award of costs was inappropriate when the lawsuit raised issues of public importance. Add. 5; App. 1157; R. Doc. 1218, at 5. Finally, and "most importantly" according to the district court, Add. 6; App. 1158;

---

[4] The Clerk of Courts for the District of Minnesota previously denied certain transcript costs, App. 956–58; R. Doc. 1125-1, at 1–3, which Defendants did not include in this Bill of Costs. The Clerk did, however, deny all costs related to a certain deposition transcript due to a missing invoice, *id.*; Defendants provided that missing documentation and included this deposition on its Bill of Costs.

R. Doc. 1218, at 6, it concluded Plaintiffs were likely unable to pay the costs (either now or in the future), citing to Plaintiffs' 2011 IFP applications. *Id.* The district court said that "[t]here is no reason for the Court to believe that these numbers have substantially changed," and that it was "highly doubtful that Plaintiffs will be able to pay these costs now or in the future." Add. 6–7; App. 1158–59; R. Doc. 1218, at 6–7.

Defendants now appeal this denial of their costs.

## STANDARD OF REVIEW

The Court reviews a district court's decision to award costs for abuse of discretion. *Martin v. DiamlerChrysler Corp.*, 251 F.3d 691, 695 (8th Cir. 2001). A district court abuses its discretion by basing its holding on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

## SUMMARY OF ARGUMENT

The district court's "most important[]" reason for denying Defendants' request to recover their costs was Plaintiffs' purported inability to pay the judgment. But the district court did not cite any evidence related to Plaintiffs' ability to pay, despite its stated importance of this factor. Nor could it, as Plaintiffs repeatedly declined to offer *any* evidence of their current financial situation or that Plaintiffs themselves were responsible for paying any cost judgment. Rather, the evidence

that *is* in the record supports the conclusion that Plaintiffs are either able to pay Defendants' costs or are not personally responsible for any such payment, as Plaintiffs initially agreed to front half of the 706 Experts' compensation—an amount eventually equivalent to over $350,000. But instead of making even a cursory inquiry into this issue, the district court simply referenced that Plaintiffs had qualified for IFP status thirteen years ago and assumed, without any foundation, that Plaintiffs' finances had not "substantially changed." The denial of costs on the basis of indigency without any evidentiary support was an abuse of discretion.

But even if the Court put aside this serious error, the order denying costs conflicts with the controlling legal standard and is fundamentally one-sided—a far cry from the "fair and equitable" result claimed by the district court. Plaintiffs, not Defendants, asked for the appointment of the 706 Experts. The scope of work the district court provided to the experts aligned with the relief sought by Plaintiffs, not Defendants. The district court secretly instructed the 706 Experts to find examples of individuals at MSOP that would assist Plaintiffs, not Defendants. And Plaintiffs, not Defendants, spent the first six days of their case-in-chief offering testimony from the 706 Experts. That Defendants must now pay the compensation for these experts is the antithesis of a "fair and equitable" result. The district court's order should be reversed.

# ARGUMENT

**THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO HOLD PLAINTIFFS TO THEIR EVIDENTIARY BURDEN TO REBUT DEFENDANTS' PRESUMPTION TO COSTS.**

The Federal Rules of Civil Procedure create a "strong presumption" that a prevailing party will recover its costs "in full measure." *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir. 2002) (citing *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462, 468 (8th Cir. 2002)); *Greaser v. Mo. Dep't of Corr.*, 145 F.3d 979, 985 (8th Cir. 1998) (holding that Rule 54 represents a "codification of the presumption that the prevailing party is entitled to costs"). This liability for a prevailing party's costs is, according to the Supreme Court, a "normal incident of defeat." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981). To rebut this presumption, the non-prevailing party bears the burden to show that a cost award "is inequitable under the circumstances." *Concord Boat*, 309 F.3d at 498. A district court must provide a rationale for denying the prevailing party's claim for costs, and a "general statement of fairness" is insufficient to rebut the presumption that a prevailing party is entitled to its costs. *Thompson v. Wal-Mart Stores, Inc.*, 472 F.3d 515, 517 (8th Cir. 2006).

There is no dispute that Defendants are presumptively entitled to recover the full $837,926.13 sought.[5]  The district court nevertheless concluded that Plaintiffs met their burden to rebut Defendants' presumptive entitlement to costs based on their purported inability to pay, the chilling effect of a large cost award, the good faith nature of their claims, and the lawsuit's importance to the public.  But none of these four bases make Defendants' requests for costs inequitable, and in any event they are unsupported by the record.  Requiring Plaintiffs to pay for the cost of the experts they requested is a fair and equitable result.

### A.     The District Court's Bases For Concluding Plaintiffs Rebutted The Presumption That Defendants Are Entitled To Recover Costs Are Not Legally Or Factually Supported.

#### 1.     Plaintiffs Did Not Provide Any Evidence Demonstrating Their Inability To Pay The Cost Judgment.

The district court denied Defendants' Bill of Costs because, "most importantly," it believed Plaintiffs "likely" did not have the ability to pay the costs. This conclusion suffers from at least three fatal deficiencies: (1) Plaintiffs' IFP status does not insulate them from costs, (2) Plaintiffs provided no evidence to support

---

[5] Although Plaintiffs argued below that certain transcript expenses were not allowable costs, the district court did not agree.  Plaintiffs did not cross-appeal this issue, and accordingly any argument that certain costs were not recoverable under the Rule is waived.  *See Steckelberg v. Chamberlain School Dist.*, 77 F.4th 1167, 1171 n.2 (8th Cir. 2023).

their purported inability to pay, and (3) Plaintiffs provided no evidence that they are personally responsible for paying any cost judgment.

### a. Plaintiffs' IFP Status Does Not Exempt Them From Costs.

First, the mere fact that Plaintiffs qualified to proceed *in forma pauperis* at the time they filed this lawsuit—nearly thirteen years ago—does not exempt them from a cost judgment. 28 U.S.C. § 1915(f)(1); *Jackson v. Unknown Smith*, 116 F.3d 480, 1997 WL 325433, at *1 (8th Cir. 1997) (per curium) ("A prevailing party may recover costs as a matter of course, if not precluded by federal law, whether the unsuccessful party is fee-paying or indigent.").[6] Notably, the Eighth Circuit has upheld multiple awards of Rule 54 costs against non-prevailing parties experiencing economic hardship. *E.g.*, *Lampkins v. Thompson*, 337 F.3d 1009, 1017 (8th Cir. 2003); *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983).[7]

---

[6] *See also Porter v. McDonough*, No. 09-2536 (RHK/SER), 2011 WL 821181, at *1 (D. Minn. Mar. 2, 2011) (ordering indigent prisoner to pay costs: "While inability to pay may support denying costs, it does not mandate it"); *Strutton v. Meade*, No. 4:05CV02022, 2010 WL 4609365, at *2 (E.D. Mo. Nov. 4, 2010) (awarding costs against indigent defendant and stating that "taxing costs in favor of the prevailing party is generally done as a matter of course").

[7] Other circuits have also held that an indigent litigant may have costs taxed against him at the conclusion of the case if he is unsuccessful on the merits of his action. *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir.1989) (noting that "several courts of appeals have approved the taxation of costs against indigent civil rights plaintiffs"); *Lay v. Anderson*, 837 F.2d 231, 232–33 (5th Cir.1988) (per curiam); *Harris v. Forsyth*, 742 F.2d 1277 (11th Cir.1984); *Flint v. Haynes*, 651 F.2d 970, 973 (4th Cir.1981).

### b.    Plaintiffs' Claimed Indigence Lacked Evidentiary Support.

Second, the district court's conclusion regarding Plaintiffs' indigence was speculative and lacks evidentiary support. The district court appears to have understood that thirteen-year-old IFP applications are not evidence of Plaintiffs' present ability to pay, as it qualified its findings related to Plaintiffs' indigency. Add. 7; App. 1159; R. Doc. 1218, at 7 (stating it was "highly doubtful" that Plaintiffs could pay these costs now or in the future, and that plaintiffs are "likely" unable to pay); Add. 6; App. 1158; R. Doc. 1218, at 6 (stating there was "no reason for the Court to believe" that Plaintiffs' finances have changed in 13 years, and that it was "unlikely" any plaintiff would be released in the near future).

Conclusory statements of indigence, without actual evidence of financial hardship, are insufficient to avoid taxation of costs. *See, e.g.*, *Johnson v. Mead Johnson & Co.*, No. 11-cv-225, 2013 WL 3340124, at *1 (D. Minn. July 2, 2013) (declining to vacate the cost judgment when presumptive payor "provided no evidence about his own financial status"), *rev'd on other grounds by* 754 F.3d 557 (8th Cir. 2014); *see also Williams v. Crawford & Co.*, No. 3:20-CV-1553, 2022 WL 4466723, at *2 (N.D. Tex. Sept. 25, 2022) (awarding costs even though suit was brought in good faith and losing party had limited resources, when it failed to provide any evidence to deny costs); *Burdess v. Cottrell, Inc.*, No 4:17-cv-1515, 2022 WL 888135, at *3 (E.D. Mo. Mar. 25, 2022) (taxing costs and finding that

losing parties did not "substantiate[] their supposed indigence with adequate supporting evidence"); *Butterfield v. CiCi Enterps.*, No. CV-20-1590, 2020 WL 7047654, at *1 (D. Ariz. Dec. 1, 2020) (refusing to disallow costs when losing party provided no evidence of her financial situation); *Beckley v. St. Luke's Episcopal-Presbyterian Hosps.*, No. 4:17-cv-1369, 2019 WL 2437957, at *2 (E.D. Mo. June 11, 2019) ("Without any evidence of Plaintiff's alleged financial troubles, the Court has no basis to evaluate Plaintiff's ability to pay.").[8]

Plaintiffs had four separate opportunities to provide the district court with evidence of their inability to pay the cost judgment, *see* App. 860–95; R. Doc. 1100; at 1–36; App. 940–49; R. Doc. 1116, at 1–10; App. 960–70; R. Doc. 1127, at 1–11; App. 1138–51; R. Doc. 1207, at 1–11, but for whatever reason, Plaintiffs chose not to. Plaintiffs cannot rebut Defendants' presumptive entitlement to costs by simply making bald allegations of indigency or claiming they will prove their indigency later. *See, e.g.*, *Rivera v. City of Chicago*, 469 F.3d 631, 635 (7th Cir. 2006) (holding that the losing party must provide the district court with "sufficient documentation

---

[8] *See also N. Am. Composites Co. v. Reich*, No. 15-cv-3537 (PJS/JJK), 2016 WL 4074140, at *1 (D. Minn. July 29, 2016) (denying motion to set aside cost judgment, finding declaration of nonprevailing party outlining her bank account balance and her income after monthly expenses was insufficient to meet her burden to show she could not pay costs in the foreseeable future); *Gebreslassie v. Lyngblomsten*, No. 05-326 (DWF/JSM), 2007 WL 270431, at *1 (D. Minn. Jan. 25, 2007) (finding that affidavit outlining current "dire financial situation" was insufficient to show he could not pay costs in the future, as "his financial circumstances could change in the time during which the judgment is valid").

to support" a finding of indigency, which should include "evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses"); D. Minn. L.R. 54.3(c)(3)(A) ("Within 14 days after the clerk taxes costs, a party may file and serve a motion *and supporting documents* for review of the clerk's action." (emphasis added)).   Instead, Plaintiffs were obligated to support those assertions with actual evidence.  They did not, so the district court abused its discretion by reaching a conclusion that required evidentiary support on a record that, in fact, lacked any such evidence.

### c.    The Record Suggests Plaintiffs Are Not Personally Responsible For Paying Costs, And Plaintiffs Did Not Provide Evidence To The Contrary.

Third, and most significant, Plaintiffs failed to provide any evidence that they are personally responsible for paying the costs in this litigation.

In *Hogan v. Novartis Pharmaceuticals*, the Second Circuit concluded a purportedly indigent litigant had funds available to cover litigation costs because her lawyer agreed to cover any taxed costs as part of his retainer agreement. 548 Fed. App'x 672, 674 (2d Cir. 2013).   Here, in light of the presumption that Defendants are entitled to recover their costs, Plaintiffs bear the burden to provide evidence that, under their retainer agreement with their lawyers, Plaintiffs are personally responsible to pay the costs and are unable to do so.   Indeed, unless it is explicitly laid out in their retainer agreement that a party is personally responsible

for taxed costs, that responsibility should fall to the lawyer. *See* Minn. R. Prof. Cond. 1.5(b) (stating that the "scope of the representation and the basis or rate of the fee and *expenses for which the client will be responsible* shall be communicated to the client, preferably in writing before or within a reasonable time after commencing the representation" (emphasis added)). Plaintiffs provided no evidence of their retainer agreement or that they are personally responsible to pay Defendants costs.

Further undermining the district court's order is Plaintiffs' prior agreement to split the compensation of the 706 Experts "50/50." Add. 19; App. 269; R. Doc. 403, at 1. Given Plaintiffs' documented indigence at that time, it seems they could not have *personally* agreed to initially cover thousands of dollars in compensation for the 706 Experts in the first place. The district court ignored this critical piece of information—information that notably comprised part of the record below, unlike any evidence substantiating Plaintiff's alleged indigency—and it conducted no inquiry into counsel's ability to pay the requested cost judgment.

By excusing Plaintiffs from their responsibility to provide evidence of their purported inability to pay, the district court effectively nullified the "strong presumption" in favor of the prevailing party. This erroneous view of the law and improper analysis of the record was an abuse of discretion and requires reversal.

## 2. Any Purported "Chilling Effect" On Future Litigation Is Speculative And Unsupported By The Record.

The district court speculated that a cost judgment in favor of Defendants may have a chilling effect on Plaintiffs and class members filing additional civil rights actions. Add. 5–6; App. 1157–58; R. Doc. 1218, at 5–6. Putting aside the fact that Plaintiffs did not make this argument below, this conclusion is unsupported by the record and the host of lawsuits that have been filed by MSOP clients over the last decade.

Plaintiffs and class members have known since 2013 that the 706 Experts' compensation could be taxed as costs at the conclusion of the litigation. Yet this knowledge has not stifled MSOP clients from filing a multitude of litigation in both federal and state court. Of note, during the pendency of the *Karsjens* litigation the District of Minnesota stayed numerous lawsuits filed by MSOP clients raising similar issues to those raised by *Karsjens*, including First and Fourth Amendment challenges related to allowable media, religion, searches, and seizures. *See, e.g.*, App. 791–821; R. Doc. 1083, at 1–31; *see also* App. 777–79, 782–84; R. Doc. 1076-1, at 3–5, 8–10 (identifying approximately 100 pending cases that raised issues similar to *Karsjens*, some of which were filed before, and some filed after, *Karsjens* began).

Moreover, there are, and have been, myriad non-*Karsjens*-related lawsuits in both federal and state court filed by MSOP clients against MSOP that are not

included in that list. A Westlaw search quickly shows that since December 6, 2013—the date the district court appointed the 706 Experts and indicated their compensation would be taxed as costs in the litigation—the District of Minnesota has issued over 400 decisions in civil cases that contain the phrase "Minnesota Sex Offender Program." In addition, this Court has issued over twenty opinions on cases filed by clients civilly committed to MSOP during that same time period. The host of MSOP-related litigation dispels the district court's concern regarding a "chilling effect" on litigation. Instead, the district court again offers only speculation on how a cost award would impact future litigation. Add. 7; App. 1159; R. Doc. 1218, at 7 (stating that imposing costs "*could* have a *potential* chilling effect on future litigants" (emphasis added)).

Finally, to the extent the district court is concerned that the *amount* of costs Defendants seek will stifle litigation, that concern is misdirected. That Defendants' bill of costs is large is a product of the district court's own making, as over 85% of Defendants' costs stem from the district court's appointment of *four* experts at Plaintiffs' request and over Defendants' objection. But appointing experts under Rule 706 is rare, and it is a power that this Court has cautioned should be "exercised only under compelling circumstances." *U.S. Marshals Serv. v. Means*, 741 F.2d 1053, 1059 (8th Cir. 1984). Nor does Rule 706 does not "contemplate the appointment of and compensation for an expert to aid one of the parties." *Brown v.*

*Cooper*, No. 18-cv-219, 2018 WL 3360769, at *1 (D. Minn. July 10, 2018). If the rare occurrence arises where court-appointed experts are necessary, and a court is concerned that potential liability for large expert costs may have a chilling effect on future lawsuits, it can appoint a single expert rather than four to reduce this concern. But denial of the recovery of a party's costs when it was the district court that caused those costs, based on concern about a "chilling effect," is unsupported by the case law and should be rejected by this Court.

### 3. The "Good Faith" and "Public Interest" Nature Of Plaintiffs' Lawsuit Does Not Rebut Defendants' Presumption To Recover Costs.

The district court also cited Plaintiffs' "good faith" basis to file this lawsuit in denying Defendants' costs. But there is no requirement in either Rule 54 or 28 U.S.C. § 1920 that a finding of bad faith is required before a prevailing party is entitled to its costs, and numerous courts have held that the non-prevailing party's good faith alone is insufficient to justify the denial of costs to the prevailing party. *See, e.g.*, *Pacheco v. Mineta*, 448 F.3d 783, 794–95 (5th Cir. 2006) ("Every circuit to expressly address the question in a published opinion—the Fourth, Sixth, Seventh, Ninth, and Tenth—has ruled that good faith, by itself, cannot defeat the operation of Rule 54(d)(1)." (collecting cases)).[9]

---

[9] In relying on Plaintiffs' good faith as a basis to deny costs, the district court cited *Kaplan v. Mayo Clinic*, Civ. No. 07-cv-3630 (JRT/JJK), 2011 WL 3837095 (Footnote Continued on Next Page.)

Every litigant has an obligation to bring suits in food faith. Minn. R. Prof. Cond. 3.1. If good faith alone relieved a non-prevailing party's obligation to pay costs, Rule 54(d)(1) would be rendered meaningless. The fact that Plaintiffs purportedly brought their lawsuit in good faith is insufficient to rebut the presumption favoring Defendants' recovery of costs.

Likewise, the district court's reference to the lawsuit's "public importance" as a reason to deny costs is not a reason to deny costs. Defendants are unaware of any binding Eighth Circuit precedent considering "public importance" when determining whether a non-prevailing party has met its burden to avoid the taxation of costs; indeed, the district court relied solely on out-of-circuit caselaw for its analysis of this factor. This dearth of Eighth Circuit precedent makes sense. Similar to why "good faith," by itself, cannot be a reason to deny costs, the fact that a lawsuit raises publicly important issues should not be a reason to deny costs. Arguably, any case that alleges a violation of a civil right raises a question of public importance. *See, e.g.*, *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (holding nominal damages available for denial of due process because "the law recognizes the importance to

---

(D. Minn. Aug. 29, 2011). In *Kaplan*, however, the non-frivolity of the lawsuit was only a secondary determination to the denial of costs; the primary reason cited by the court for denying costs was because the plaintiffs provided actual evidence that they were facing dire financial circumstances. *See id.* at *1. *Kaplan* is inapposite, as unlike those plaintiffs, the Plaintiffs in this case failed to provide *any* evidence of their financial circumstances.

organized society that those rights be scrupulously observed"). But, as discussed above, there is no prohibition on taxing costs against non-prevailing plaintiffs in civil rights cases. *E.g.*, *Lampkins v. Thompson*, 337 F.3d 1009, 1017 (8th Cir. 2003).

None of the four bases on which the district court grounded its denial withstand scrutiny. The order should be reversed.

## B. The District Court's Order Denying Defendants' Costs Was Neither Fair Nor Equitable.

The district court concluded that denying costs was the "fair and equitable thing to do," but the district court's order is neither fair nor equitable.

First, the 706 Experts were appointed at Plaintiffs' request[10]—a request that Defendants strenuously opposed. App. 239–46; R. Doc. 328, at 1–8. Taxing court-appointed experts' compensation as costs is provided in the text of Rule 706, and accordingly Plaintiffs surely knew, before they ever filed their motion requesting the appointment of the 706 Experts, that they could be liable for the experts' compensation if they lost this litigation. *See* Fed. R. Evid. 706(c)(2) (stating that the compensation for the court-appointed experts is "charged like other costs"). Now that Plaintiffs have, in fact, lost, Defendants should not be saddled paying the compensation for the experts Plaintiffs asked for.

---

[10] And, as discussed, the scope of the 706 Experts' work, as determined by the district court, was nearly identical to what Plaintiffs claimed was "essential" to their case. *See supra* pp. 4–7.

Second, the district court made clear that if *Plaintiffs* prevailed in this litigation, they were encouraged to seek recovery of their costs. Specifically, when the district court denied as premature Plaintiffs' request that Defendants pay their litigation costs, the district court was clear that its ruling "in no way prohibits Plaintiffs from recovering their costs and fees if ultimately successful at the close of the case." App. 256; R. Doc. 354, at 4. What is more, Plaintiffs taxed their appellate costs after they prevailed in *Karsjens II*. *See* Plaintiffs-Appellants' Bill of Costs, *Karsjens v. Lourey*, No. 18-3343 (8th Cir. Mar. 10, 2021), Entry ID: 5012971. It is not surprising that Defendants are attempting to do the same thing that the district court suggested Plaintiffs do—that is, seek recovery of their costs if they prevailed— and what Plaintiffs did when they prevailed before this Court.

If the district court was truly concerned with what was "fair and equitable," it would have split the initial allocation of the 706 Experts' compensation 50/50, like the parties had agreed. Add. 19; App. 269; R. Doc. 403, at 1 (stating that "[t]he parties recommend an allocation of 50/50 between plaintiffs and defendants"). Had the district court adopted this agreement, Defendants would have incurred only half of the 706 Experts costs.

Given these issues, the "fair and equitable thing to do" is allow Defendants to recover the costs the district court stated could be taxed at the conclusion of the litigation. At a minimum, Defendants should be entitled to recover the $350,000

they incurred as a result of the district court's rejection of the parties' agreement to split the initial allocation of expert expenses.

## CONCLUSION

Based on the foregoing, the Court should reverse the district court's order denying Defendants their costs.

Dated: November 5, 2024

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Scott H. Ikeda**
SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771

AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

BRANDON BOESE
Assistant Attorney General
Atty. Reg. No. 0396385

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1385 (Voice)
(651) 282-5832 (Fax)

scott.ikeda@ag.state.mn.us
aaron.winter@ag.state.mn.us
brandon.boese@ag.state.mn.us

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE
## WITH FRAP 32

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,690 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 pt Times New Roman font.

<u>**s/ Scott H. Ikeda**</u>
SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771

## CERTIFICATE OF COMPLIANCE
## WITH 8th Cir. R. 28A(h)(2)

The undersigned, on behalf of the party filing and serving this brief and addendum, certifies that the brief and addendum have been scanned for viruses and that they are virus-free.

**s/ Judy Fusco**
Judy Fusco

***Kevin Karsjens, et al. v. Jodi Harpstead, et al.***
**Eighth Circuit Court File No. 24-2876**

## CERTIFICATE OF SERVICE

I certify that on November 5, 2024, I electronically submitted the Brief and Addendum of Defendants-Appellants to the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the NextGen CM/ECF system.

I further certify that all participants in the case are registered NextGen CM/ECF users and that service will be accomplished by the NextGen CM/ECF system.

Within five days of the notice that the Defendants-Appellants' Brief and Addendum have been accepted for filing with the Court, I will serve via U.S. Mail the foregoing documents upon Plaintiffs-Appellees, through their counsel.

Dated:  November 5, 2024

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

**s/ Scott H. Ikeda**
SCOTT H. IKEDA
Assistant Attorney General
Atty. Reg. No. 0386771

AARON WINTER
Assistant Attorney General
Atty. Reg. No. 0390914

BRANDON BOESE
Assistant Attorney General
Atty. Reg. No. 0396385

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 757-1385 (Voice)
(651) 282-5832 (Fax)
scott.ikeda@ag.state.mn.us
aaron.winter@ag.state.mn.us
brandon.boese@ag.state.mn.us

*Attorneys for Defendants-Appellants*

|#5928879-v1